564 So.2d 1146 (1990)
Susan Carol SPILLERT, Appellant/Cross-Appellee,
v.
Leonard J. SPILLERT, Appellee/Cross-Appellant,
No. 89-1874.
District Court of Appeal of Florida, First District.
July 3, 1990.
Rehearing Denied August 15, 1990.
*1147 Albert Datz, of Datz, Jacobson & Lembcke, Jacksonville, for appellant/cross-appellee.
Hal Castillo, of Lewis, Paul, Isaac & Castillo, Jacksonville, for appellee/cross-appellant.
BARFIELD, Judge.
The parties appeal and cross-appeal the final judgment of dissolution of marriage because neither is satisfied with the trial judge's award of support and distribution of property. Because we find the trial judge erred in valuing the husband's medical practice, we reverse and remand for review by the trial judge of both support and property distribution.
The husband is a plastic surgeon in Jacksonville, Florida, in a professional corporation known as Leonard J. Spillert, M.D.P.A. in which he is a sole practitioner. The wife's expert witness valued his medical practice at $560,660 to $682,118. The husband's expert valued the medical practice at $140,690. In the final judgment, the trial judge found the husband's practice worth $350,675 "which represents averaging of the differences of the two expert opinions," a figure not based on any evidence in the record.
We reverse the awards for support and distribution of property and direct the trial judge to use the valuation of Neil Ossi, $140,690, in determining support and property distribution because the valuation proposed by Charles Wiggins is premised on a legally erroneous analysis.
Charles Wiggins, a professor of accounting and finance at the University of North Florida, testified regarding the "fair market value" and "investment value" of the husband's P.A. He used a computer program to project the husband's income to the year 2006 (when he is 65) reduced to *1148 present value. Backing out his actual income, and putting in the fair market salary for an average plastic surgeon, Wiggins computed a real growth rate (in excess of 5% inflation) of 2%/year, and set a required return of 30-32% (i.e., treating the husband as an investor in the practice). Using regression analysis, he found that the "fair market value" of the practice on 1-1-89 was $560,660 (i.e., a physician could buy the practice for that amount, pay himself an average annual salary of $208,000 and still make 30% return on the investment). Wiggins also determined the "investment value" as of that date (i.e., assuming the husband remains with the practice) to be $682,118 (he explained the difference by a lower required return of 20% due to the fact that there is no risk of transfer).
On cross-examination, Wiggins stated that the computer program he used was for service businesses, but that he had never evaluated a sole practitioner plastic surgeon P.A. before; he was not aware that four plastic surgeons in Jacksonville had been unable to sell their practices (he was given their names, but didn't call them). In his calculations, he assumed a straight transfer to someone of Dr. Spillert's training and expertise under similar conditions; he admitted he was not aware of any plastic surgeon practices having been sold in Jacksonville. He assumed that Spillert would stay on during a transition period and that a noncompete clause would be included in the transfer. He admitted that if Dr. Spillert died, the practice could probably not be sold for the "fair market value" he had calculated.
Neil Ossi, president of Corporate Business Investment Company, which specializes in business sales and evaluations, found that as of 12-31-88 the P.A. was worth $140,690 (including cash, net accounts receivable, furniture and equipment, the Porsche, leasehold improvements, net equity and instruments). He reduced the gross accounts receivable by the 72% collection rate and the 30% expenses to $100,000; he valued the furniture and equipment at $5000, the investment in the clinic at $8000, the car at $17,000, and the leasehold improvements and instruments at $5,600. He did not include in his "fair market value" Spillert's personal goodwill, but only the value of the assets and the "business value," for which he considered the type of practice and "how he gets patients." By "business value," Ossi seems to be referring to professional goodwill (the tendency of patients to return irrespective of Dr. Spillert's presence). By "goodwill," Ossi seems to be referring to "personal goodwill" (the tendency of patients to return because of Dr. Spillert's expertise).
Ossi checked around the southeast for sales of solo medical practices; he found that three plastic surgeons in Jacksonville had been unable to sell their practices (the wife's objection to this question was sustained). He found that in 1988, two medical practices (general practice and general surgery) sold on the value of the assets alone, with no business value included. He felt that veterinarians and dental practices often have business value because of the convenience of their location and their record keeping functions, but found that over 50% of Dr. Spillert's referrals were from the emergency room referral lists and that his "value is in his head and hands, and you can't transfer that." On cross-examination, he testified that a one-owner business is very difficult to sell; that the only value of the P.A. is the tangible assets and accounts receivable; and that all the goodwill is Dr. Spillert's.
We are not willing to exclude the possibility of valuing personal goodwill as the court did in Moebus v. Moebus, 529 So.2d 1163 (Fla. 3d DCA 1988). However, proof of such valuation may be extremely difficult. When provable by the appropriate evidence, enterprise goodwill may be considered in valuing a spouse's professional association. In this case, however, there is no evidence upon which an appropriate valuation of enterprise goodwill may be made. We do not consider Wiggins' capitalization of future income method appropriate for valuation of professional associations for the purposes of marital dissolution proceedings. Since there have been no comparable sales and no offers to buy the practice, we find that the only expert opinion *1149 supported by competent substantial evidence was Ossi's. He found no value for enterprise goodwill and valued the association based upon its tangible assets and the adjusted accounts receivable. Adoption of Ossi's value for the husband's P.A. will require adjusting the lump-sum alimony award. However, we do not preclude the trial court on remand from adjusting the other awards, including the permanent periodic alimony award, in order to do equity between the parties.
Both parties have petitioned for appellate attorney fees. The trial court found that due to the disparity of income between the parties, the husband should be required to pay the attorney fees and costs of the wife below. Neither petition for appellate attorney fees complies with rule 9.400(b): "A motion for attorney fees may be served not later than the time for service of the reply brief and shall state the grounds upon which recovery is sought." Neither petition cites any authority, statutory or otherwise, for the award of attorney fees. Both petitions are denied.
REVERSED and REMANDED for further proceedings consistent with this opinion.
SHIVERS, C.J., and WIGGINTON, J., concur.