*548
 
 KAHN, J.
 

 The trial court entered a final judgment dissolving the marriage of Marshall Ross Jones, Jr., the husband, and Stephanie L. Jones, the wife. In pertinent part, the court 1) classified a promissory note— signed by the husband (the payee) and his mother, Annette B. Jones (the maker) — as a marital obligation; 2) valued the promissory note at $112,500.00, or 50% of its $225,000.00 face value, for equitable distribution purposes; 3) found the husband intentionally wasted or dissipated marital assets; and 4) denied the wife’s motion for attorney’s fees and costs. The husband appeals the discounting of the promissory note and the finding of marital waste. The wife cross-appeals the designation of the promissory note as a valid marital debt and the denial of her attorney’s fees and costs. We affirm without comment the trial court’s factoring the dissipation into the equitable distribution under section 61.075(l)(i), Florida Statutes (2007), and
 
 Rabbath v. Farid,
 
 4 So.3d 778, 780-81 (Fla. 1st DCA 2009), and the court’s denial of fees and costs. We affirm the valuation of the note for the reasons that follow.
 

 FACTUAL AND PROCEDURAL BACKGROUND
 

 In her petition for dissolution, the wife requested an equitable distribution of assets and liabilities. In his response and counter-petition, the husband characterized the subject promissory note as a valid marital debt; the wife contended the note is inauthentic, essentially valueless, and not a marital liability.
 

 Before the parties’ marriage, the husband’s father deeded to him a parcel of North Carolina real property. The husband’s mother, Annette B. Jones, deeded the husband two additional North Carolina parcels of real property in 2002. The mother testified that when she executed the deed to her son, she and he entered a temporary transfer of property agreement stipulating that the sole purpose of the transfer was management of the land, all of which was leased out for farming. During the marriage, the parties became interested in purchasing a vacation home and eventually settled on a lake house. The husband testified that together, he, the wife, and his mother discussed selling the North Carolina parcels to fund the purchase of the lake house. When the North Carolina properties were sold to a third party in 2006 for $325,000.00, Mrs. Jones’ representative shredded the temporary transfer agreement. Despite his title to these lands, the husband testified he had agreed with his mother to share the land with his siblings and not to retain the land permanently as his own.
 

 Pursuant to that arrangement, the husband gave his mother a promissory note stating that for value received, he promised to pay Annette B. Jones $225,000.00, without interest, on demand or in annual payments of $5,000.00 during Mrs. Jones’ lifetime. The remaining balance due at the time of Mrs. Jones’ death would be fully payable to her estate. The note stated that payments were to begin on January 15, 2008, and that security for this loan was $225,000.00 of the equity in 12.9 acres of real property, together with the parties’ lake house on that parcel. The face of the note indicates the husband and his mother signed it on September 3, 2006, some four years after Mrs. Jones deeded the North Carolina farm property to her son. Annette B. Jones testified the note was executed before the closing on the lake house, as a means of providing the husband with sufficient funds to buy that property. He did not receive cash in exchange for the note. Instead, most of the $325,000.00 from the sale of the farm land went into a marital bank account and then was used to
 
 *549
 
 fund the September 2006 closing on the parties’ lake house. The husband testified his wife knew the parties were borrowing money from his mother to purchase the lake house. Annette B. Jones testified she gave the husband a copy of the note in the wife’s presence.
 

 The wife, who did not sign the promissory note, asserted in the trial court that she had no contemporaneous knowledge of either the note or the obligation to pay back any amount to her mother-in-law. She claimed to have never heard of or seen the note until the dissolution proceedings commenced and her relationship with Annette B. Jones deteriorated. The parties agreed, however, they could not have purchased their lake house without the monies provided them by Mrs. Jones, traceable to the sale of the North Carolina property. The parties made no stipulation as to the true value of the note. The testimony of the husband and his mother directly conflicted with the wife’s testimony relating to the circumstances surrounding the creation of the promissory note and its intent and enforceability. The wife expressed great doubt as to whether her mother-in-law would actually enforce the terms of the note against her son.
 

 In the final judgment, the judge identified the promissory note as a marital liability, finding the former husband incurred the obligation during the marriage. The court did not, however, believe that Annette B. Jones would actually require her son to repay the note in full. Despite the language in the note, the trial court concluded the note lacked the formalities necessary to encumber the lake house property. The court determined not to value the note at its full face value and, instead, assigned to the note a value of $112,500.00. Thus, the trial court accorded some credence to the note as a marital obligation while rejecting evidence it would be fully enforced by Mrs. Jones. On appeal, the husband claims he should be assigned the note’s full value as a marital debt for purposes of equitable distribution. The wife claims error in characterizing the note as a marital obligation at all.
 

 ANALYSIS
 

 The ultimate conclusion as to whether a debt is marital or nonmarital is an issue of law subject to de novo review.
 
 Smith v. Smith,
 
 971 So.2d 191, 194 (Fla. 1st DCA 2007). We do not, however, sit as finders of fact as to matters determined by the trial court and supported by competent substantial evidence.
 
 Jeantilus v. State,
 
 944 So.2d 500, 501 (Fla. 4th DCA 2006). Under the equitable distribution statute, marital liabilities include “liabilities incurred during the marriage, individually by either spouse or jointly by them.” § 61.075(5)(a)l., Fla. Stat. (2007). Competent substantial evidence demonstrated the husband and his mother signed the note in September 2006, during the parties’ marriage. All liabilities incurred by either spouse after the date of the marriage, and not specifically shown to be nonmarital liabilities, are presumed to be marital liabilities; this presumption is overcome, for evidentiary purposes, by showing the liabilities are nonmarital. § 61.075(7), Fla. Stat. Here, the evidence supports the court’s classification of the promissory note as a marital debt. Competent substantial evidence, including testimony concerning the wife’s knowledge of the note and the parties’ means of acquiring the lake house, supports the trial court’s decision that the note, once characterized as a liability, had some value, but not necessarily its face value.
 

 A trial court has broad discretion to fashion an equitable distribution of assets and liabilities.
 
 Kovalchick v. Kovalchick,
 
 841 So.2d 669, 670 (Fla. 4th DCA
 
 *550
 
 2003). It is the parties’ duty to present evidence to support their claims, and the trial court’s accuracy in valuing an asset or liability is only as good as the evidence offered.
 
 See Sauder v. Coast Cities Coaches, Inc.,
 
 156 So.2d 162, 165 (Fla.1963). By contending the note was a belated contrivance and had no value, the wife made valuation an issue. The husband asserts the trial court — having heard his argument that the note is worth its full face value of $225,000.00 and the wife’s argument that the note is invalid and worthless — was required as a matter of law to value the note at either zero or its face value, rather than apply a Solomonic formula by splitting the difference or choosing some other value between those two figures.
 

 We find no such rigid requirement in the Florida law of equitable distribution, nor has the husband cited any binding authority. The trial court, in its discretion, had to give the note some true value for equitable distribution purposes.
 
 See Cornette v. Cornette,
 
 704 So.2d 667, 669 (Fla. 2d DCA 1997) (concluding the net value of real property for marital asset distribution purposes should have been based on the amount former husband was willing to pay former wife for her interest, rather than the parties’ equity in the property, where the property was in foreclosure and the tenants were bankrupt and no longer paying rent);
 
 Ritter v. Ritter,
 
 690 So.2d 1372 (Fla. 2d DCA 1997). In that respect, the trial judge stood in a superior position to evaluate the credibility of the parties and of Annette B. Jones in determining the circumstances and intent surrounding the creation, timing, and col-lectability of the note. The obligation here, far from being limited to its facial recitation, is more like a debt memorialized by a promissory note, owed by a company no longer in business — the actual valuation of the debt is likely to be significantly less than its face value due to the unlikelihood a creditor will receive the full amount from the debtor. This case represents an instance where, despite the face amount of the note, the court relied on competent substantial evidence indicating the true value of the marital debt is significantly less. Moreover, valuation of such an obligation was not amenable to expert opinion. Under these conditions, where the trae value of the note was somewhere between the face value and zero, we cannot say the trial court abused its broad discretion by discounting the face amount to achieve an equitable distribution.
 
 See Cornette,
 
 704 So.2d at 667.
 

 In other “split the difference” decisions cited by the husband, where the valuation of an asset for equitable distribution purposes relied on expert opinions, Florida appellate courts have reversed the trial court’s valuation in an amount different from the amount stated by an expert.
 
 See, e.g., Augoshe v. Lehman,
 
 962 So.2d 398, 402-03 & n. 1 (Fla. 2d DCA 2007) (finding no competent substantial evidence to support the trial court’s $3.5 million valuation of a motel purchased by the husband during the marriage, where he relied solely on the $2.8 million purchase price but the wife’s expert opined the respective values were $4.3 million or $4.4 million, depending on whether he applied the income approach or the sales approach, and the trial court reached its valuation figure apparently by adding $4.3 million and $2.8 million and then dividing the sum by two);
 
 Spillert v. Spillert,
 
 564 So.2d 1146 (Fla. 1st DCA 1990). In
 
 Spillert,
 
 the husband’s expert valued the husband’s medical practice at $140,690; the wife’s expert valued the practice at $560,660 to $682,118. In resolving equitable distribution and support issues, the trial court added the husband’s valuation to the wife’s low-end valuation and then divided the sum, valuing the
 
 *551
 
 practice at $850,675. We reversed the awards for support and equitable distribution, stating that the higher valuation was based on “a legally erroneous analysis,” and directing the trial court to use the husband’s valuation figure — the only competent substantial evidence — in resolving support and property distribution issues. 564 So.2d at 1147-48.
 

 The husband also cites
 
 Solomon v. Solomon,
 
 861 So.2d 1218 (Fla. 2d DCA 2008), in which the Second District Court reversed the trial court’s valuation of the marital residence for purposes of equitable distribution, which split the difference between the valuations offered by the husband and the wife. The district court concluded that no competent substantial evidence supported the lower tribunal’s valuation figure.
 
 Id.
 
 at 1221. In contrast to those decisions on which the husband relies, the valuation of the promissory note in the instant case is not an issue for resolution by expert opinion. Given the peculiar circumstances and conflicting evidence involving the creation, timing, and enforceability of the promissory note, we can readily distinguish those decisions disallowing a splitting of the difference in values. As with properties subject to bankruptcy, the actual valuation of the note is substantially less than its face value, and the trial court correctly exercised its discretion to achieve an equitable result.
 

 AFFIRMED.
 

 VAN NORTWICK and THOMAS, JJ., concur.