WARNER, J.
A mother appeals an order finding her in contempt and modifying the parties’ visitation schedule with the children. She complains that the court relied on its independent investigation of the facts of the case in making its determination, and the court further erred by modifying existing visitation provisions without the issue being properly raised in pleadings, noticed for determination, or litigated below, and without there being any evidence that any change would be in the best interests of the children. We agree that the court erred, and reverse the order of contempt and modification of visitation.
The father, Kevin Rogers, petitioned for a determination of paternity as to the minor children, and in 2006, the court accepted a general magistrate’s recommended order establishing paternity, establishing child support, requiring the father to purchase health and life insurance, and determining a visitation schedule for the father, with various conditions regarding county of residence, telephone contact, and communication between the parties.
Almost immediately after the entry of the order, the father filed a motion for contempt over the mother’s failure to allow visitation and other issues. A general master found that the father had been denied visitation and ordered make-up visitation, which could be enforceable by contempt.
In February 2009 the mother filed a motion for contempt against the father for nonpayment of child support and failure to provide health and life insurance as specified in the original order. The father reciprocated by filing a motion for contempt and sanctions, alleging that the mother continued to violate the visitation provisions of the 2006 order. In his prayer for relief, the father requested that the court find the mother in contempt, order sanctions to include make-up visitation or even a change of custody, and award him attorney’s fees in presenting the motion.
The case proceeded to a hearing on the parties’ motions. The father testified as to his lack of visitation with the children. He testified that with the exception of the weekend before the hearing, his last visit occurred some six months prior to the hearing. He had not received the children for rotating holidays, as specified in the order. In addition, he had not spoken with the children on the telephone for a year. According to the father, the mother told him to stop calling her residence or else she would call the police. When he tried calling the mother’s number in October 2008, it was disconnected. At one point, the father suspected that the mother had moved. Although the father was supposed to be on the contact list at the children’s schools and day cares, the father did not know where his children were attending school until the week before the hearing, even though he had discussed the purchase of uniforms for the school with the mother prior to the beginning of the school year.
The father acknowledged that he and the mother were supposed to communicate via e-mail, pursuant to the 2006 order. He was unsure of the mother’s e-mail address, though they exchanged e-mail addresses at some point. He also admitted to at least one occasion when he could not make a scheduled visit with the children because of his work schedule, explaining that “there will come times when I actually can’t do it, of course.”
The mother also testified at the hearing, claiming that she had been living at her parents’ home with the children for the *235 last six years. The mother claimed that the father had made harassing phone calls to the residence, but she denied ever telling the father that he could not call. The mother testified that she tried to have the children call the father every night at 7:00 p.m., but that there were times when his phone was disconnected.[1] After August 2008, the mother tried to call the father on occasion, as well as the paternal grandmother’s number, which she tried nine or ten times over the past year. The mother also claimed that she left two messages on the paternal grandmother’s telephone regarding Thanksgiving and Christmas visits.
According to the mother, the father visited irregularly with the children. She claimed that sometimes the father would call a day or two before the visits and say that he could not take the children. The mother also testified that the father is the secondary emergency contact for the children at their school.
The paternal grandmother, Sandra Rogers, also testified, denying that she had received any calls from the mother for a year. She further testified that when she spoke with the mother in September 2008, the mother told her that she would do anything in her power to keep the children from seeing the father or the father’s family-
Following the presentation of testimony and argument, the trial court found the mother in contempt. In explaining his finding, the trial judge stated: “One of the things that [was] stated by the mother was that she had in fact listed the father with the school. That’s not what the school says.... Nowhere does the name of the father appear.” The court stated that this information was “totally inconsistent with the testimony given under oath by the mother. Therefore, I find it very difficult to accept or believe anything that [is] uttered from her mouth.” When counsel for the mother pointed out that there appeared to have been an ex parte communication with the school, the judge explained: “I called the school to find out.... I did it to protect the children.” The mother’s counsel then asked for the name of the person at the school whom the judge spoke to, but the judge replied that he “threw away the name,” explaining that the person was not the principal but was someone in the administration office.
The trial judge suggested to the mother that he could enforce the visitation rights of the father by shipping the children from her home to his and letting the mother worry about visitation just as the father had done for the last three years. However, the trial judge stated that he could not do that to the children because they have been with the mother. Instead, the court increased the father’s visitation to every weekend. The court also ordered that the father would receive telephone calls from the children at 7:00 p.m. every night they were staying with the mother. Subsequently, a written order incorporating these rulings was entered, from which this appeal is taken.[2]
We first address the trial court’s independent investigation of the facts of this matter, which served as the linchpin of the court’s evaluation of the evidence. The judge’s investigation constituted a fundamental denial of due process.
With limited exceptions, “[a] judge shall not initiate, permit, or consider ex parte communications, or consider other commu *236 nications made to the judge outside the presence of the parties concerning a pending or impending proceeding....” Fla. Code Jud. Conduct, Canon 3B(7). The commentary to this canon states, “A judge must not independently investigate facts in a case and must consider only the evidence presented.” As the Supreme Court of South Dakota has explained, “A judge simply cannot be both a judge and [an attorney] searching out facts favorable to [a party] without abandoning his or her judicial neutrality.” State v. McCrary, 676 N.W.2d 116, 125 (S.D.2004). These principles were riot followed in this case.
“[E]very litigant is entitled to nothing less than the cold neutrality of an impartial judge.” State ex rel. Davis v. Parks, 141 Fla. 516, 519-20, 194 So. 613, 615 (1939). Our supreme court has adhered to the principle that the courthouse is “temple of justice” where all litigants “may enter its portal with the assurance that they may controvert their differences in calm and dispassionate environment before an impartial judge and have their rights adjudicated in a fair and just manner.” Williams v. State, 143 So.2d 484, 488 (Fla.1962). That neutrality is destroyed when the judge himself becomes part of the fact-gathering process.
A trial judge’s decision must be overturned when “the appellate court cannot determine if the trial judge’s actions were harmless because the trial court’s order was based on-communications outside the record.” Wilson v. Armstrong, 686 So.2d 647, 648-49 (Fla. 1st DCA 1996). We have no difficulty in this case finding that this error was harmful to the proceedings. The trial judge specifically stated that he relied upon his independent communication with the school in determining the mother’s credibility. By initiating communication with the children’s school administration and independently investigating the facts, the trial judge abandoned his role as a neutral arbiter of the dispute. The independent investigation served to deny the mother due process. We reverse and remand.
Furthermore, the court erred in substantially modifying the visitation schedule in the order finding the mother in contempt, because that relief had not been properly requested by the father in any pleadings, and the issue of the children’s best interests was never litigated. Section 61.13(4)(c)6., Florida Statutes (2009), provides that when a parent refuses to honor the time-sharing schedule in the parenting plan without proper cause, the court may “upon the request of the parent who did not violate the timé-sharing schedule, modify, the parenting plan if modification is in the best interests of the child.”[3] In this case, however, the relevant inquiry is not whether the trial court had the authority under the statute to modify the visitation, but rather whether a modification of visitation violated the mother’s right to due process under the circumstances.
“It is well settled that an order adjudicating issues not presented by the pleadings, noticed to the parties, or litigated below denies fundamental due process.” *237 Neumann v. Neumann, 857 So.2d 372, 373 (Fla. 1st DCA 2003); accord Mizrahi v. Mizrahi, 867 So.2d 1211, 1213 (Fla. 3d DCA 2004) (“Due process protections prevent a trial court from deciding matters not noticed for hearing and not the subject of appropriate pleadings.”). Therefore, “Florida courts have repeatedly held that it is a violation of a parent’s due process rights for a court to modify visitation in a final judgment unless the issue of modification is properly presented to it by written pleadings, noticed to the parties, or litigated below.” Foerster v. Foerster, 885 So.2d 927, 929 (Fla. 2d DCA 2004).
In Neumann, for example, the former husband filed a motion for contempt and enforcement. However, neither the pleadings nor the notice of hearing requested that the former husband’s visitation schedule be modified. Nonetheless, the trial court entered an order modifying his visitation schedule. The First District reversed the trial court’s order, holding that “by adjudicating an issue not presented by the pleadings, the trial court violated the Former Husband’s right to due process and abused its discretion.” Neumann, 857 So.2d at 373.
Although we affirmed a trial court’s order of contempt which also modified a time-sharing visitation plan in Ginnell v. Pacetti, 31 So.3d 217 (Fla. 4th DCA 2010), the parties had presented evidence and argument concerning the child’s best interests at the hearing, thus fulfilling the requirements of subsection 61.13(4)(c)6., Florida Statutes (2008), which allows a court to, “upon the request of the parent who did not violate the time-sharing schedule, modify the parenting plan if modification is in the best interests of the child.” One could say that the issue was tried by implied consent.
Here, however, the trial court’s modification of visitation was an abuse of discretion, as the issue was never “properly presented to it by written pleadings, noticed to the parties, or litigated below.” Foerster, 885 So.2d at 929. While the motion for contempt included a boilerplate request for a change of custody in the prayer for relief, the motion did not allege that the change would be in the children’s best interests, nor was any evidence presented at the hearing on the children’s best interests. From a review'of the transcript, we cannot conclude that the issue was litigated by implied consent. See Pelliccia v. Arce, 867 So.2d 619 (Fla. 2d DCA 2004) (reversing order changing primary custody where, although the father’s contempt motion sought a change of custody in the prayer for relief, the father did not allege in the motion that it would be in the child’s best interests to modify primary residential custody and that issue was never litigated). Therefore, the wife’s due process rights were violated by the court’s granting relief not within the issues tried.
For the foregoing reasons, the order is reversed and remanded for a new proceeding. Because of the independent investigation conducted by the original trial judge, we direct that further proceedings occur before a different judge.
POLEN and TAYLOR, JJ., concur.

. The father, however, disputed this, testifying in rebuttal that his phone had never been disconnected.

. The court's rulings as to the mother’s motion are not at issue in this appeal.

. Notably, the statute, which was amended in 2008, formerly provided that the court may "award custody, rotating custody,'or primary residence to the noncustodial parent, upon the request of the noncustodial parent, if the award is in the best interests of the child.” § 61.13(4)(c)5„ Fla. Slat. (2007); see also Ch. 2008-61, § 8, Laws of Fla. The First District interpreted this former version of the statute to require three elements for a modification of custody: (1) a custody modification request by the noncustodial parent; (2) a showing that the custodial parent has denied the noncustodial parent’s visitation rights without "proper cause” and; (3) a determination by the trial court that a modification of custody is in the best interests of the parties children. Kaschak v. Kaschak, 890 So.2d 427, 428 (Fla. 1st DCA 2004).