# Third District Court of Appeal

## State of Florida

Opinion filed September 21, 2022.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D21-0915
Lower Tribunal No. 12-8423
_____

**Lynette Logreira,**
Appellant,

vs.

**Efrain Logreira,**
Appellee.

An appeal from the Circuit Court for Miami-Dade County, Marcia del Rey, Judge.

Nancy A. Hass, P.A., Nancy A. Hass (Fort Lauderdale), Nullman Law, and Steven A. Nullman, for appellant.

Davis Smith & Jean, LLC, Laura Davis Smith, and Sonja A. Jean, for appellee.

Before FERNANDEZ, C.J., and EMAS, and MILLER, JJ.

MILLER, J.

Appellant, the mother, appeals a post-decretal order rendered pursuant to a motion for modification of time-sharing filed by appellee, the father. In the order, the trial court directed the parties' children to participate in Family Bridges, an intensive program purporting to remedy the effects of Parental Alienation Syndrome ("PAS"). The oldest child turned eighteen during the pendency of this appeal. Consequently, the family court no longer has jurisdiction over him, rendering the portion of the challenged order requiring him to participate moot. See Ford v. Ford, 153 So. 3d 315, 317 (Fla. 4th DCA 2014); Hardman v. Koslowski, 135 So. 3d 434, 436 (Fla. 1st DCA 2014); see also § 61.13(2), Fla. Stat. (2022); § 61.503(2), Fla. Stat. (2022). We reverse the remaining provisions of the order because the father failed to present competent, substantial evidence that participation in the program serves in the best interests of the remaining child.

## BACKGROUND

The facts underlying this appeal were articulated in our previous decision in Logreira v. Logreira, 322 So. 3d 155 (Fla. 3d DCA 2021), where we reversed a related order of referral to the Family Bridges program on due process grounds. As salient to this appeal,

> Nearly a decade after reaching a settlement agreement providing for shared responsibility of their two minor children, the parties filed competing motions seeking modifications of the parenting plan. Relying upon various articles and a social investigation

2

report, the former husband contended the children, both teenagers, suffered from PAS. He specifically posited the children displayed unwarranted hostility as the result of indoctrination by the former wife and sought to enroll them in a therapeutic program. In the event therapeutic intervention proved unsuccessful, he alternatively sought additional timesharing and a downward modification of child support. The former wife countered by attributing the hostility to a historical incident of abuse involving the parties' oldest child, along with instances of negligent parenting by the former husband, including a failure to participate in the children's school events, graduation, and athletic and extracurricular activities. She sought to modify the timesharing schedule to reflect that the former husband regularly declined to exercise overnight visitation and further requested an upward modification of child support, or, in the alternative, enrollment in a family-based reunification program.

The motions culminated in a nine-day bench trial, at the conclusion of which the trial court modified the parenting plan and ordered the children into Family Bridges, a family reunification program based outside of the State of Florida. . . . [T]he court ordered the parties to "both fully comply with enrolling and making certain the two minor children attend the entire Family Bridges program." It further ordered the parties to "comply with the recommendations of all mental health and after care professionals as part of" the program, and specified "[i]n the event the children in connection with the Family Bridges program are placed to live with the Father, the Mother shall have no contact direct or indirect with the minor children until . . . that portion of the Family Bridges Program successfully concludes."

Id. at 157–58 (second alteration in original) (footnote omitted).

The trial court executed two separate orders to facilitate participation in Family Bridges. The first order granted the father exclusive custody of the children and prescribed the conditions of the program. The second order,

3

the subject of this appeal, modified the parenting plan to reflect compelled participation in the program. While lengthy and factually driven, the latter order contains only an unelaborated conclusion that participation in the program was in the best interests of the children. The court did not conduct any factfinding or analysis relating to either the enumerated statutory factors or any other relevant circumstances bearing on the welfare or health of the children.

After the orders were executed, the wife pursued two simultaneous appeals. In the first appeal, she challenged the enrollment order, contending the trial court violated her due process rights by denying her the opportunity to be heard on the proposed conditions and awarding the father greater relief than that sought in the underlying motion for modification. We reversed the order on procedural grounds but expressed no opinion on the looming issue of whether the referral to Family Bridges was legally sustainable. Id. at 159.

In this appeal, the mother asserts the modification of the parenting plan runs afoul of established statutory principles. More specifically, she contends the father failed to demonstrate that there was a substantial, material, and unanticipated change in circumstances necessitating a change in custody and that participation in Family Bridges was in the best interests of the children.

4

## STANDARD OF REVIEW

We review an initial time-sharing decision for an abuse of discretion. See Schwieterman v. Schwieterman, 114 So. 3d 984, 987 (Fla. 5th DCA 2012). Our review of a modification of an existing time-sharing decision is slightly different. "[T]he trial court does not have the same broad discretion to modify custody that it exercises in initial determinations of custody." Boykin v. Boykin, 843 So. 2d 317, 320 (Fla. 1st DCA 2003); see also Jablon v. Jablon, 579 So. 2d 902, 903 (Fla. 2d DCA 1991); Cooper v. Gress, 854 So. 2d 262, 265 (Fla. 1st DCA 2003); Culpepper v. Culpepper, 408 So. 2d 782, 784 (Fla. 2d DCA 1982); Paskiewicz v. Paskiewicz, 967 So. 2d 277, 279 (Fla. 3d DCA 2007). In modification cases, the dispositive issues are whether there is competent, substantial evidence proving: (1) a substantial, material, and unanticipated change of circumstances; and (2) that the welfare of the child will be promoted by a change in time-sharing. Buttermore v. Meyer, 559 So. 2d 357, 359 (Fla. 1st DCA 1990).

## LEGAL ANALYSIS

To prevail on his modification motion, the father bore the dual burden of demonstrating there had been a substantial, material, and unanticipated change of circumstances since the ratification of the initial parenting plan,

5

and the best interests of the children would be served by compelled enrollment in Family Bridges. See § 61.13(2)(c), Fla. Stat. As to the former prong, the mother presents a compelling argument that the evidence established the current circumstances were anticipated due to the historical family dynamic, and the parents' increased animosity and inability to communicate do not constitute legally sufficient grounds to justify a modification. See Ogilvie v. Ogilvie, 954 So. 2d 698, 701 (Fla. 1st DCA 2007); Sanchez v. Hernandez, 45 So. 3d 57, 62 (Fla. 4th DCA 2010); Ring v. Ring, 834 So. 2d 216, 217 (Fla. 2d DCA 2002); see also J.G.J. v. J.H., 318 So. 3d 632, 634 (Fla. 2d DCA 2021); Albert v. Rogers, 57 So. 3d 233, 237 (Fla. 4th DCA 2011). Because the latter prong is dispositive, we need not weigh in on this argument.

The best interests of the child is the polestar consideration in time-sharing decisions. See Burgess v. Burgess, 347 So. 2d 1078, 1079 (Fla. 1st DCA 1977). In determining best interests, section 61.13, Florida Statutes, requires the trial court to evaluate all relevant factors, twenty of which are statutorily enumerated, bearing on the welfare of the child.

The statute is devoid of any express requirement that the trial court engage in an individualized discussion of each of the enumerated factors. However, several of our sister courts have determined that the failure to

engage in any best interests analysis whatsoever renders a custody order legally insufficient. See Winters v. Brown, 51 So. 3d 656, 658 (Fla. 4th DCA 2011); Kyle v. Carter, 290 So. 3d 640, 642 (Fla. 1st DCA 2020); Clark v. Clark, 825 So. 2d 1016, 1017 (Fla. 1st DCA 2002); In re Z.L., 4 So. 3d 684, 685 (Fla. 2d DCA 2009); In Int. of B.T., 597 So. 2d 398, 399 (Fla. 1st DCA 1992). Orally rendered findings are adequate to satisfy the statute. See Vinson v. Vinson, 282 So. 3d 122, 134 (Fla. 1st DCA 2019); Marquez v. Lopez, 187 So. 3d 335, 337 (Fla. 4th DCA 2016).

Against this background, we examine the instant case. The trial court did not make any specific statutory findings, orally or in writing, and there was no direct testimony of record that participation in the Family Bridges program would promote the welfare and best interests of the children. Consequently, we are left to comb through the record to determine whether an inference arises that participation inures to the benefit of the children.

Several witnesses opined that strengthening the paternal relationship would benefit the entire family. No witness, however, posited that requiring the children to participate in Family Bridges was consistent with their best

7

interests.[1]  Instead, a careful review of the record compels the opposite conclusion.

Of the two testifying experts, only one, Dr. Martha Jacobson, shed light on the statutory best interests factors.[2]  She observed that the children were thriving in the care of their mother.  They had established close ties with her and developed physically and emotionally.   Both children excelled academically, were well-supported by peer networks, and participated in extracurricular activities.

Despite these observations, Dr. Jacobson strongly believed that a relationship with both parents was in the best interests of the children.  However, she expressed concerns regarding participation in Family Bridges.  To enroll in the program, the children would be subject to certain controversial requirements, including a forced separation from their mother for an indeterminate time period.  Dr. Jacobson opined that this particular condition would not promote the welfare of the children.  Indeed, she stated

---

[1] The father offered the factually unsupported conclusion that program participation was in the best interests.  This does not constitute competent, substantial evidence.  See Airsman v. Airsman, 179 So. 3d 342, 345 (Fla. 2d DCA 2015).

[2] The other expert, Dr. Miguel Firpi, Ph.D., was called by the father to testify solely as to PAS.

she was uncertain as to whether forced participation in Family Bridges would "detrimentally harm" the children.

Although we are not unmindful that the trial court was in a superior position to observe and evaluate the witnesses, upon this record, the finding that compulsory participation in Family Bridges is in the best interests of the children cannot be sustained. See Shaw v. Shaw, 334 So. 2d 13, 16 (Fla. 1976); In re A.C., 848 So. 2d 433, 434 (Fla. 2d DCA 2003); Jones v. Jones, 51 So. 3d 547, 550 (Fla. 1st DCA 2010); see also Delgado v. Silvarrey, 528 So. 2d 1358, 1361 (Fla. 3d DCA 1988) (reversing a change in custody order where "[t]he trial court incorrectly regarded the father's best interests as the determinative factor"). Accordingly, we are constrained to reverse the order under review and remand for further proceedings.

Reversed and remanded.